344

[613 NYS2d 595]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO VASQUEZ, Appellant.

First Department, June 16, 1994

---

### APPEARANCES OF COUNSEL

*George W. Albro* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Kathleen E. Fay* of counsel *(Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

The defendant was arrested 11 days after the murder he was charged with having committed at a location remote from the scene of the crime. It is conceded that at the time of the arrest the defendant was not observed engaging in any illegal activity. It is, moreover, conceded that there was no outstanding warrant for the defendant's arrest.

Following defendant's arrest, a gun was seized from his person and incriminating statements were made by him. Upon being notified of the People's intention to use the physical evidence and statements against him, the defendant moved to suppress the evidence alleging that both the physical evidence and the statements had been obtained as a consequence of an illegal arrest and that the statements had not been voluntarily made. In support of the suppression motion the defendant alleged:

"MOTION TO SUPPRESS

"7. Upon information and belief based upon information supplied by the District Attorney, the defendant VASQUEZ is alleged to have been asked certain questions by law enforcement officials and to have made certain statements in response thereto. Any such statements by the defendant should be suppressed by the Court on the grounds that the defendant

was not fully apprised of his Miranda rights at the time of any such statements and/or did not knowingly waive such rights. Based upon the voluntary disclosure form supplied by the People, it appears that the defendant VASQUEZ was arrested approximately 11 days after the incident alleged in the indictment. Your affirmant believes, based upon information provided by the District Attorney and upon my conversations with the defendant, that it is not even claimed that the defendant was engaged in any illegal activity at the time of his arrest. Thus, it appears that defendant VASQUEZ was placed under arrest without probable cause. Consequently, any statements made by said defendant, as well as any evidence seized from him and any identifications made of him pursuant to such arrest must be suppressed by this Court.

### "SUPPRESSION OF PHYSICAL EVIDENCE

"8. As set forth in greater detail in paragraph '7', supra, your affirmant believes that the defendant VASQUEZ was unlawfully arrested without probable cause. For this reason, your affirmant requests that this Court suppress all evidence seized from the defendant CAROLINA [sic] pursuant to such unlawful arrest."

In opposition to that part of the aforecited motion seeking suppression by reason of the illegality of the arrest, the People alleged, in reliance upon CPL 710.60, that the defendant had not made sufficient "sworn allegations of fact" even to warrant a hearing upon the motion. Although the court granted the defendant a *Huntley* hearing to test the voluntariness of his inculpatory statements, it denied his request for a *Dunaway/Mapp* hearing to ascertain whether those statements and the gun seized from his person had been obtained as a consequence of an illegal arrest. The principal issue upon this appeal is whether the above-quoted pleading was, under the circumstances, so deficient as to warrant summary denial of the *Dunaway/Mapp* branch of the suppression motion pursuant to CPL 710.60.

Assessing a pleading in support of a motion to suppress evidence against the sufficiency standard set forth in CPL 710.60 (1), i.e., that "The motion papers must state the ground or grounds of the motion and must contain sworn allegations of fact, whether of the defendant or of another person or persons, supporting such grounds," is an exercise which has in the past produced varied and sometimes conflicting determinations, some courts expressing the view that the most minimal

factual allegations will pass muster *(see, e.g., People v Miller,* 162 AD2d 248, *lv dismissed* 76 NY2d 895, *after remand* 172 AD2d 446, *lv denied* 78 NY2d 956) and others that only a detailed factual recitation of the circumstances allegedly warranting suppression will suffice to perpetuate the motion *(see, e.g., People v Covington,* 144 AD2d 238, *lv denied* 73 NY2d 890). Considerable clarity has, however, been brought to this area of adjudication by the Court of Appeals recent decision in *People v Mendoza* (82 NY2d 415).

The teaching of *Mendoza* particularly relevant to the present matter is that allegations in support of a motion to suppress should not be assessed for sufficiency without reference to the context of the motion or the extent to which the defendant has been afforded access to such information as would enable him to set forth an optimally detailed factual predicate for suppression *(People v Mendoza, supra,* at 422). What *Mendoza* recognizes is that an adverse adjudication of substantive rights based upon a pleading deficiency can only be justified when the failure to plead in greater factual detail can be fairly taken as indicative of the lack of underlying substantive merit to the movant's ultimate claim. Thus, where a defendant is not in a position to allege a factual predicate for suppression in greater detail, "seemingly barebones allegations may * * * be sufficient to require a hearing" *(People v Mendoza, supra,* at 427); in such a situation it would not be fair to make a conclusive inference as to the merit of the defendant's suppression claim from the face of the pleading. That is precisely the situation at bar.

As was noted in *Mendoza,* "Whether a defendant has raised factual issues requiring a hearing can only be determined with reference to the People's contentions" *(supra,* at 427). But the People's contentions as to the basis for the present defendant's seizure remain at this late date nothing short of a mystery and certainly were not known to the defendant at the time of his *Dunaway/Mapp* motion. In this regard, it is appropriate to note that the defendant's arrest was not the consequence of a buy-and-bust operation in which probable cause was generated by a police-infiltrated transaction practically contemporaneous with the arrest and of which the defendant would almost certainly have had direct knowledge *(see, People v Mendoza, supra,* at 428-429). Rather, the defendant was arrested at a time and place remote from the murder for which he was charged, in circumstances where he was, as he alleged, not suspected of the contemporaneous

commission of any illegal act,[1] and where there was no warrant for his arrest outstanding. The defendant, then, had utterly no notion as to what the arresting officers knew which would have furnished a predicate for their seizure of him. In this connection, it should be stressed that whether or not the defendant knew he had done something illegal was not the relevant issue in determining whether there had been an unreasonable search and seizure; it was rather whether the *police* knew a sufficient amount about any transgressions by the defendant to render their intrusion upon him legal. Plainly, the defendant was not obliged globally to assert his innocence of all wrongdoing as a condition of maintaining his motion to suppress. All that he was obliged to do was to raise an issue as to the legality of the arrest, and to do that no more could reasonably have been required than that he cast into question, to the extent possible given the nature of the factual context and the information made available to him, whether the arresting officers' knowledge of any wrongdoing by him was sufficient to constitute probable cause. Here, however, the basis for the arrest was not self-evident and there had been absolutely no disclosure by the People as to the grounds upon which the arresting officers premised the seizure. Indeed, no information concerning the arrest was provided in the People's voluntary disclosure form; and, although the defendant specifically included, along with his pretrial motion papers, a discovery request for information respecting the arrest, including a copy of any warrant pursuant to which the arrest had been effectuated, the People's response was that the defendant was not entitled to any more information than had already been disclosed in the voluntary disclosure form.[2] Thus, while it is doubtless true that "[t]he motion to suppress is not the first document in a prosecution (CPL 710.40 [1]), and indeed is often preceded by information staking out the People's position with respect to the circumstances of a search or arrest" *(People v Mendoza, supra,* at 427-428), it is plain that in this case the disclosure process was not productive of any information "staking out the People's

---

1. At the defendant's *Huntley* hearing one of the arresting officers was asked "Prior to Detective Mahoney handcuffing Mr. Vasquez did you observe Mr. Vasquez commit any violations of war *[sic]?*", to which the officer responded, "No."

2. Nor was the information at the defendant's disposal augmented by the People's response to the motion which was entirely devoid of factual content.

position" and that the defendant was reduced, in a situation in which his underlying claim of police illegality might very well have possessed merit, to pleading in the dark. This was, in the final analysis, not a case in which the defendant's ability specifically to deny the existence of a proffered seizure predicate, taken in conjunction with his failure to do so, justified the inference that he could not do so (see, People v Mendoza, supra, at 428; see also, People v Gruden, 42 NY2d 214, 218), and, accordingly, there should not have been a summary denial of his motion. Given the extreme paucity of information available to the defendant, his allegations to the effect that he had been doing nothing wrong at the time of the arrest and that he did not believe the arrest to have been supported by probable cause were adequate to sustain the motion at least to the extent of a hearing. Indeed, in a situation such as the one at bar it is not so much the defendant's allegations which raise the issue as to the legality of the arrest as the People's complete failure to come forward with any factual predicate which would even hint at a justification for the seizure. It must be supposed that if such a predicate existed it would be known to the People. Thus, where the claimed predicate for the seizure is not self-evident, and the People fail to make even minimal disclosure with respect thereto, the only fair inference is that the legality of the seizure is, at the very least, questionable. While the statute undeniably requires allegations of fact from the defendant, it does not require such allegations to be made in a contextual vacuum of the People's making; the requirement assumes a context in which a pleading fairly indicative of merit, or the lack thereof, is feasible.

As Mendoza implicitly recognizes, and as is in any case obvious, it was not the Legislature's intention in enacting CPL 710.60 to create an insuperable barrier to the assertion of possibly meritorious suppression claims; only a construction of the statute fundamentally offensive to basic notions of due process and fair play would countenance the creation of a prosecutorial windfall by requiring the summary denial of a suppression motion when the pleading deficiency upon which the denial was sought was principally attributable to the People's failure to make any disclosure as to the basis for the challenged search or seizure. In inserting a pleading requirement into the statute, the Legislature could not have meant effectively to empower one side in an adversarial system of justice unilaterally to determine whether a suppression claim

would be litigated and, what is more, to do so upon grounds having no perceptible relation to the merits.

Accordingly, the appeal from the judgment of the Supreme Court, New York County (Edward McLaughlin, J.), rendered July 25, 1990, convicting the defendant, upon his plea of guilty, of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent indeterminate terms of imprisonment of 15 years to life and 2⅓ to 7 years, respectively, should be held in abeyance *(see, People v Mendoza, supra,* at 434), and the matter remanded for a *Dunaway/Mapp* hearing.

WALLACH, RUBIN and NARDELLI, JJ., concur.

Appeal from judgment, Supreme Court, New York County, rendered July 25, 1990, held in abeyance *(see, People v Mendoza,* 82 NY2d 415, 434), and the matter remanded for a *Dunaway/Mapp* hearing.